IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT L. HOLBROOK, | ) | |
|     Plaintiff, | ) | Civil Action No. 10-265PITTSBURGH |
| | ) | |
| v. | ) | District Judge McLaughlin |
| | ) | |
| CAPTAIN JOHN KINGSTON, et al, | ) | Magistrate Judge Baxter |
|     Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that Defendants' partial motions for judgment on the pleadings [ECF Nos. 37 and 49] be granted in part and denied in part. More specifically, Defendants' motions for judgment on the pleadings should be granted as to the claim that the opening of his outgoing legal mail violates his constitutional rights as he has failed to state a claim upon which relief may be granted. Defendants' motions for judgment on the pleadings should be denied in all other regards.

**II.    REPORT**

    **A.  Relevant Procedural History**

Plaintiff, a state inmate acting *pro se*, initiated this civil rights action in February 2010. Plaintiff alleges that prison officials at the State Correctional Institution at Greene ("SCI-

Greene") interfered with his mail, and he seeks monetary damages and declaratory relief[1] for violations of his constitutional rights under 42 U.S.C. § 1983. Named as Defendants are: Captain John Kingston; Captain Craig Haywood; and Superintendent Louis Folino. All three Defendants are sued in their official[2] and individual capacities.

Plaintiff summarized this action in his Original Complaint:

> This is a civil rights action asserting Defendants violated Plaintiff's First Amendment rights by placing him on a Department of Corrections Mail Watch list that allowed Defendants to read, photocopy and monitor all of Plaintiff's outgoing and incoming mail in retaliation for Plaintiff's cooperation with activist organization monitoring abuse at SCI Greene and in Department of Correction prisons and because of the content of Plaintiff's articles published in media outlets that criticized SCI Greene and Department of corrections policies and abusive practices.

ECF No. 6, page 2.

Plaintiff's Complaint has been liberally construed as containing three distinct causes of action:

(1) Violation of the First Amendment when prison officials opened and read Plaintiff's outgoing and incoming nonlegal mail;

(2) Violation of the First Amendment when prison officials opened and read a letter from Plaintiff's attorney outside of his presence on January 24, 2007; and

---

[1] As to the declaratory relief, Plaintiff seeks "a declaratory judgment that Defendants violated Plaintiff's First Amendment rights of freedom of expression and freedom of the press by placing him on Mail Watch from February 2007 to March of 2008 in retaliation for Plaintiff's cooperation with activists monitoring prisoner abuse and the content of Plaintiff's articles criticizing SCI Greene and Department of Correction policies and allegations of prisoner abuse." ECF No. 6, ¶ 58.

[2] Plaintiff seeks damages from each of the three Defendants in their official capacity. The Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981)(Pennsylvania); Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274 (1977) (state agencies); Edelman v. Jordan, 415 U.S. 651 (1974) (state employees acting in their official capacity). To the extent that Plaintiff seeks damages from Defendants in their official capacities, he has failed to state a claim upon which relief may be granted.

2

> (3) Violation of the First Amendment when prison officials placed Plaintiff on "Mail Watch" between February 6, 2007 and March 6, 2008 in retaliation for Plaintiff's past correspondence with religious and prison watch-dog groups

ECF No. 6.

On January 21, 2011, Plaintiff amended the Original Complaint to add new details concerning the prison mail watch.[3] ECF No. 24. In response, Defendants filed a motion to dismiss arguing that all three claims were time-barred in their entirety, and alternatively, that Plaintiff's allegations failed to state a claim upon which relief could be granted. ECF No. 25.

On August 4, 2011, the undersigned issued a Report and Recommendation recommending that the motion to dismiss be granted in part and denied in part: "the interference with Legal and nonlegal mail claims should be dismissed as they are barred by the statute of limitations, while the retaliation claim should remain pending as it is not completely barred by the statute of limitations and Plaintiff has not failed to state a *prima facie* claim upon which relief may be granted." ECF No. 30.

Plaintiff filed Objections to the Report and Recommendation explaining that the opening of his mail was not limited to a single incident, but that the Magistrate Judge should have applied the continuing violations doctrine and "assumed that all of Plaintiff's correspondence was opened and read" without Plaintiff having to list every single incident of mail opening. ECF No. 31.

By Order dated September 15, 2011, District Judge McLaughlin adopted the Report and Recommendation in part, holding: "After a *de novo* review of the documents in the case, together with the Report and Recommendation and objections thereto, I agree that the motion to dismiss should be denied with respect to the retaliation claim and adopt the Magistrate Judge's

---

[3] Because Plaintiff is a *pro se* litigant, this Court liberally construed the Amended Complaint as a supplement to the Original Complaint.

3

Report and Recommendation with respect to this claim. The Report and Recommendation is not adopted, however, with respect to the interference with legal and non-legal mail claims. The Court finds that the continuing violation doctrine may apply to these claims as the Plaintiff has alleged that he was on Mail Watch until March 2008." ECF No. 34. Therefore, all three components of Plaintiff's action survived the first dispositive motion.

On November 15, 2011, Plaintiff filed a short Second Amended Complaint (ECF No. 51) which this Court liberally construes as a supplement to Plaintiff's previously-filed pleadings. In that document, Plaintiff alleges:

> On December 6, 2007, Ms. Theresa Shoats, a Human Rights Coalition activist Plaintiff corresponded with about the abuse of prisoners at SCI Greene sent Plaintiff a letter and a newspaper article about racism at SCI Greene.
>
> Plaintiff had requested the article based on the behavior of guards at SCI Greene that Plaintiff found to be racist and offensive.
>
> SCI Greene returned the letter to Ms. Theresa Shoats without notifying Plaintiff of the denial.
>
> Plaintiff was not aware of the denial of the letter until several months later when Ms. Shoats sent him a copy of a letter from the institution justifying the denial of the letter.
>
> Plaintiff filed a grievance over the denial of the letter but the grievance was not addressed. In additional at this point SCI Greene had stopped processing complaints by the Plaintiff over the Mail Watch or the monitoring of his mail because the issue was addressed and resolved in Grievance No. 190650 by the Department of Corrections Central Office on Final Review.

ECF No. 51.

Presently before this Court are two partial motions for judgment on the pleadings. ECF Nos. 37 and 49 (ECF No. 37, filed in response to the Original and First Amended Complaints, and ECF No. 49, filed in response to the Second Amended Complaint). Defendants move for judgment as to Plaintiff's first two First Amendment claims: 1) the opening and reading of

4

Plaintiff's outgoing and incoming nonlegal mail; and 2) the opening and reading of a letter from Plaintiff's attorney outside of his presence on January 24, 2007.

Plaintiff has filed a brief in opposition to the pending motions (ECF No. 55) and these motions are fully briefed and are ripe for disposition by this Court.

### B. Standards of Review

#### 1) *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2) Motion for judgment on the pleadings

Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The standard of review for a motion for judgment on the pleadings is identical to that of a motion to dismiss under Rule 12(b)(6). See Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). The Court will accept the factual allegations as true and draw all reasonable inferences presented in the pleadings in the light most favorable to the plaintiff. Erickson v. Pardus, 554 U.S. 89, 93-94 (2007); Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its fact," a complaint will survive a motion to dismiss. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), or a motion for judgment on the pleadings, Turbe, 938 F.3d at 428.

The only difference is that on a motion for judgment on the pleadings, the Court reviews not only the complaint, but also the answer and written instruments attached to the pleadings. 2 James Wm. Moore et al., Moore's Federal Practice-Civil ¶ 12.38 (2010). The court should consider the allegations in the pleadings, the attached exhibits, matters of public record, and "undisputedly authentic" documents if plaintiff's claims are based on such documents. See Pension Benefit Guar. Corp. v. White Consol. Indus. Inc., 998 F.3d 1192, 1196-97 (3d Cir.1993).

A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12(b) (6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in

the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
>> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### C. Non-legal mail

#### 1) Outgoing Nonlegal Mail

"In the First Amendment context, ... a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). See also Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78 (1987). It is well-settled that interference with inmate mail may rise to the level of a constitutional violation under the First Amendment. Taylor v. Oney, 196 Fed.Appx 126, 128 (3d Cir. 2006).

District courts addressing claims involving outgoing inmate mail employ the test developed by the Supreme Court in Procunier v. Martinez[4]. See Hamm v. Rendell, 166 Fed.Appx 599, 603 (3d Cir. 2006). Specifically, courts should inquire as to whether the prison restriction or conduct relating to outgoing nonlegal mail furthered an important or substantial government interest unrelated to the suppression of expression, and whether the conduct was intrusive only to the degree necessary to protect that interest. Id.[5]

Defendants argue that the opening and inspecting of Plaintiff's outgoing mail was reasonably related to maintaining the security of the institution. Defendants cite to DC-ADM 803 in support of their argument. The Third Circuit has specifically examined the constitutionality of DC-ADM 803 finding:

> … Pennsylvania Department of Corrections Policy Statement DC-ADM 803 is constitutional as to its regulation of outgoing mail. The Policy statement furthers an important and substantial government interest unrelated to the suppression of expression and the limitation it imposes on First Amendment freedoms is no

---

[4] 416 U.S. 396, 412 (1974).

[5] See also Nasir v. Morgan, 350 F.3d 366, 371-74 (3d Cir. 2003) ("Because Thornburgh holds that Turner does not squarely overrule Martinez as applied to outgoing mail, we will apply Turner to incoming mail and Martinez to outgoing correspondence.").

8

> greater than necessary or essential to the protection of the particular government interest involved.

Nasir v. Morgan, 350 F.3d 366, 376 (3d Cir. 2003) (examining constitutionality of the provision limiting correspondence between current and former inmates). See also Caldwell v. Beard, 305 Fed.Appx 1, 3 (3d Cir. 2008) ("The opening and inspecting of Caldwell's outgoing mail is reasonably related to the legitimate penological interest of institutional security. […] Consequently, we agree that prison employees did not violates Caldwell's constitutional rights by inspecting his outgoing nonprivileged mail.").

Accordingly, Plaintiff's allegation regarding his outgoing mail fails to state a claim and the motions for judgment on the pleadings should be granted in this regard.

### 2) Incoming Nonlegal Mail

In regard to the alleged opening and reading of Plaintiff's incoming mail, this Court must examine the actions of Defendants under the Turner v. Safley reasonableness test, considering whether there was a valid, rational connection between the prison regulation and a legitimate governmental interest, whether there are alternative means of exercising the right, the effect of accommodation of the right on the prison generally, and whether there are ready alternatives. Nasir, 350 F.3d at 371-72.

"Under the teachings of Turner, there are two steps to take in determining whether a prison regulation is 'reasonably related to legitimate penological interests.'" Fontroy v. Beard, 559 F.3d 173, 177 (3d Cir. 2009) quoting Jones v. Brown, 461 F.3d 353, 360 (3d Cir. 2006). As a threshold inquiry, this Court must determine "whether there is a valid, rational connection between the prison regulation and the legitimate interest put forth to justify it." Monroe v.

Beard, 536 F.3d 198, 207 (3d Cir. 2008).[6] This Court must afford "substantial deference" to the professional judgment of prison officials, but the evidence brought forth by prison officials "must amount to more than a conclusory assertion." Id. It is the Department of Corrections' burden to demonstrate that a rational connection exists between the challenged policy or action and a legitimate penological interest. Id.

If this rational connection exists, this Court must then consider three additional factors in a second step analysis: 1) whether inmates have an alternative means of exercising the right; 2) the burden of prison resources that would be imposed by accommodating the right; and 3) whether there are alternatives to the regulation that fully accommodate the inmate's rights at *de minimis* cost to valid penological objections. Id.

The Turner analysis is exceedingly fact-intensive[7], which is problematic for Defendants on a motion for judgment on the pleadings. In neither of their briefs do Defendants recognize Turner as the appropriate test and consequently they offer no particular evidence in support thereof; instead, they quote the language of the unpublished Third Circuit opinion in Caldwell v. Beard, 305 Fed.Appx. 1, 4 (3d Cir. 2008), wherein the Turner case is cited and the determination made that opening and inspecting **Caldwell's** mail is reasonably related to a legitimate penological interest of institutional security. See ECF No. 38, pages 5-6; ECF No. 50, pages 5-6.

---

[6] This first Turner factor "looms especially large because it 'tends to encompass the remaining factors, and some of its criteria are apparently necessary conditions.'" Ramirez v. Pugh, 379 F.3d 122, 126 (3d Cir. 2004) quoting Waterman v. Farmer, 183 F.3d 208, 213-14 (3d Cir. 1999).

[7] See Ramirez, 379 F.3d at 130 ("[W]e repeat our observation that we have historically viewed these inquiries as being fact-intensive … [requiring] a contextual, record-sensitive analysis."); Wolfe v. Ashcroft, 297 F.3d 305, 308 (3d Cir. 2002); Brother v. Lawrence County Prison Board, 2008 WL 146828, at *5 (W.D. Pa. 2008) (describing the Turner reasonableness test as "a multi-factored fact-intensive test" which does not lend itself to resolution on a motion to dismiss); Ford v. McGinnis, 352 F.3d 582, 596 (2d Cir. 2003) (referring to the Turner analysis as "fact- and context-specific.").

Such a determination here must be made on Mr. Holbrook's particular facts and situation and not inferred from the situation in the cited case.

The deferential Turner standard is not amenable to a "common sensical" application by this Court.[8] "While the ultimate burden of persuasion with regard to the reasonableness of a regulation resides with those challenging it, the defendant administrators **must put forward** the legitimate governmental interest alleged to justify the regulation, and demonstrate that the policy drafters could rationally have seen a connection between the policy and that interest." Wolf, at 308 (emphasis added), quoting Overton v. Bazzetta, 539 U.S. 126,133 (2003) and Turner, 482 U.S. at 89. When conducting a Turner analysis, a district court must "describe the interest served, consider whether the connection between the policy and the interest served is obvious or attenuated-and, thus, to what extent some foundation or evidentiary showing is necessary-and, in light of this determination, evaluate what the government has offered." Ramirez, 379 F.3d at 128. See also Warren v. Commonwealth of Pennsylvania, 316 Fed.Appx 109, 115 (3d Cir. 2008) ("We acknowledge the legitimacy of Defendants' interest in promoting prison safety and security. [ ... But] because of Defendants' less than thorough briefing and [Plaintiff's] unfocused arguments, the record is not developed enough for us [ ... ] to engage in the Turner analysis at present.").

Here, Defendants have offered no evidence with which this Court could conduct a Turner analysis. Accordingly, the motions for judgment on the pleadings should be denied.

---

[8] See Ramirez, 379 F.3d at 128 ("[W]e find that the district court erred in evaluating the judgment as to the constitutionality of the challenged policy or action [challenged policy] under Turner's first prong on a motion to dismiss, without any analysis or inquiry into the interest involved and the connection between those interests and the restriction at issue."); Wolf v. Reno, 297 F.3d 305, 308 (3d Cir. 2002).

### 3) Legal Mail

A prisoner's right to send and receive legal mail is uncontroverted and implicates First Amendment concerns.[9] "When legal mail is read by prison employees, the risk is of a 'chill,' rendering the prisoner unwilling or unable to raise substantial legal issues critical of the prison or prison employees." Proudfoot v. Williams, 803 F.Supp. 1048, 1052 (E.D. Pa. 1992).

Defendants argue that they should be granted judgment on the pleadings because a single inadvertent opening of an inmate's legal mail fails to state a cognizable claim under the First Amendment.

Defendants misconstrue Plaintiff's claim here. Plaintiff argues that due to his status on Mail Watch, his mail was "subject to heightened scrutiny" and that his legal mail was opened and read as part of this campaign against him. Plaintiff does not allege an **inadvertent** opening of his legal mail, but a purposeful monitoring of his correspondence, an example of which is the opening of the letter from his attorney in January of 2007. Drawing all reasonable inferences in the light most favorable to the Plaintiff, the motions for judgment on the pleadings should be denied as to this claim. While Plaintiff's allegation may not ultimately be proven at trial, Plaintiff should be allowed to pursue this claim through discovery.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' partial motions for judgment on the pleadings [ECF Nos. 37 and 49] be granted in part and denied in

---

[9] The test this Court must employ in determining the constitutionality of a challenged policy or action regarding legal mail is the Turner reasonableness test. See Fontroy v. Beard, 559 F.3d 173 (3d Cir. 2009). Again, Defendants have failed to offer evidence in support of their alleged actions in opening Plaintiff's legal mail outside of his presence.

12

part.  More specifically, Defendants' motions for judgment on the pleadings should be granted as to the claim that the opening of his outgoing legal mail violates his constitutional rights as he has failed to state a claim upon which relief may be granted.  Defendants' motions for judgment on the pleadings should be denied in all other regards.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto.  See Fed.R.Civ.P. 72(b)(2).  Failure to file timely objections may constitute a waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  April 30, 2012